UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

DAVID MORGAN,

                         Plaintiff,

        v.

IDAHO DEPARTMENT OF
CORRECTION; BRENT REINKE;
KEVIN KEMPF; JEFF ZMUDA;
SHANNON CLUNEY; SHANE
EVANS; HOWARD YORDY; RANDY
BLADES; GARRETT COBURN;
LEROY PENEKU; JEANETTE
HUNTER; JEFF KIRKMAN; DAN
COPELAND; and JOSH TEWALT,

                         Defendants.

Case No. 1:15-cv-00062-CWD

**INITIAL REVIEW ORDER**

        The Clerk of Court conditionally filed Plaintiff David Morgan's Complaint as a
result of his status as an inmate and his in forma pauperis request. The Court now reviews
the Complaint to determine whether it or any of the claims contained therein should be
summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record,
and otherwise being fully informed, the Court enters the following Order.

## REVIEW OF COMPLAINT

**1.      Factual Allegations**

        Plaintiff is a prisoner in the custody of the Idaho Department of Correction
(IDOC), currently incarcerated at Idaho State Correctional Center (ISCC). Plaintiff

**INITIAL REVIEW ORDER - 1**

alleges that Defendants have denied him a kosher diet, removed him from a kosher-alternative vegan diet, and removed him from a genealogy class in which Plaintiff was learning about his Jewish ancestors. (Compl., Dkt. 3.) Plaintiff alleges that all of these actions have substantially burdened his sincerely held religious beliefs.

**2.      Standard of Law for Summary Dismissal**

The Court is required to review complaints filed in forma pauperis, or complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(d)(2) & 1915A(b).

A complaint fails to state a claim for relief under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

**INITIAL REVIEW ORDER - 2**

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a valid claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Plaintiff also asserts violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq*., as well as the Idaho Free Exercise of Religion Protected Act (FERPA), Idaho Code § 73-401 *et seq.*

**3.     Standards of Law Applicable to Plaintiff's Claims**

  **A.     *First Amendment of the United States Constitution***

The First Amendment Free Exercise Clause absolutely protects the right to believe in a religion; it does not absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940). Inmates retain their free exercise of religion rights in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). An inmate who is an adherent of a minority religion must be afforded a "reasonable opportunity of pursuing [her] faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). A prison need not, however, provide "identical facilities or personnel" for "every religious sect or group within a prison." Further, a "special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Id.* at 322 n.2.

**INITIAL REVIEW ORDER - 3**

To serve as a basis for a viable claim challenging a prison restriction under the Free Exercise Clause, an inmate's belief must be both sincerely held and rooted in religious belief. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). However, *de minimis*—or minor—burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. *See, e.g.*, *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals out of 810 does not constitute more than a *de minimis* burden on inmate's free exercise of religion). A prison's occasional failure to accommodate a religious practice does not violate the Free Exercise Clause where there is no evidence that the failures were caused by "anything other than institutional shortage." *Id.* Similarly, a temporary delay in accommodating religious practice does not violate the First Amendment when caused by ordinary administrative or institutional delay. *See Tapp v. Stanley*, 2008 WL 4934592, at *7 (W.D.N.Y. Nov. 17, 2008) (unpublished) (holding that a 3-month delay in providing a prisoner with a religious meal did not substantially burden the prisoner's sincerely-held religious beliefs where the delay was "caused by ordinary administrative delay").

Challenges to prison restrictions that are alleged "to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 125 (1977) (citation omitted). What constitutes a reasonable opportunity for religious exercise, therefore, must

**INITIAL REVIEW ORDER - 4**

be evaluated within the context of a prison's need for security, among other legitimate

goals. *O'Lone*, 482 U.S. at 350-53 (1987) (holding that a prison's policy of not allowing

Muslim inmates on work detail to return to the prison to attend Jumu'ah, a group worship

service, did not violate the Constitution).

As long as a restriction on an inmate's religious practice "is reasonably related to

legitimate penological interests," that restriction is valid. *Turner v. Safley*, 482 U.S. 78,

89 (1987). Factors to be considered in this reasonableness inquiry include: (1) whether

there is a logical connection between the governmental interest and the particular policy

or decision at issue; (2) whether "alternative means of exercising the right remain open to

prison inmates"; (3) the impact that accommodating a prisoner's religious practice would

have on "other inmates, on prison personnel, [or] on allocation of prison resources

generally," *O'Lone*, 482 U.S. at 50-52 (internal quotation marks and alterations omitted);

and (4) whether there is an absence of ready alternatives, which constitutes "evidence of

the reasonableness of a prison regulation," *Turner*, 582 U.S. at 90.

### B.   RLUIPA

The First Amendment is not the only source of religious protection within a

prison. The RLUIPA provides, "No government shall impose a substantial burden on the

religious exercise of a person residing in or confined to an institution . . . even if the

burden results from a rule of general applicability, unless the government demonstrates

that imposition of the burden on that person[] (1) is in furtherance of a compelling

governmental interest; and (2) is the least restrictive means of furthering that compelling

governmental interest." 42 U.S.C. § 2000cc-1(a). RLUIPA applies to entities receiving

**INITIAL REVIEW ORDER - 5**

federal financial assistance. *Id*. at (b)(1). By accepting federal funds, however, states do not waive sovereign immunity to suits for money damages under RLUIPA. *Sossamon v. Texas*, 131 S. Ct. 1651, 1655 (2011). Further, although the statute provides for injunctive relief, RLUIPA does not allow for monetary damages against individuals. *Wood v. Yordy*, 753 F.3d 899, 902-04 (9th Cir. 2014).

Under RLUIPA, the inmate bears the initial burden of showing that the governmental action constitutes a substantial burden on the exercise of the inmate's religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). For an official's action to constitute a substantial burden on an inmate's religious exercise, it "must impose a significantly great restriction or onus upon such exercise." *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). In determining whether an inmate's religious exercise is substantially burdened, a court may not inquire "into whether a particular belief is 'central' to a prisoner's religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (quoting 42 U.S.C. § 2000cc-5(7)(A)). However, "the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Id.*

If the inmate establishes "the prima facie existence" of a substantial burden on the exercise of the inmate's religion, the burden shifts to prison officials "to prove that [the] substantial burden on [the inmate's] exercise of his religious beliefs is *both* 'in furtherance of a compelling governmental interest' *and* the 'least restrictive means of furthering that compelling governmental interest.'" *Warsoldier*, 418 F.3d at 995 (quoting 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b)).

**INITIAL REVIEW ORDER - 6**

"The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party. If a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Holt v. Hobbs*, 135 S. Ct. 853, 864 (2015) (internal citations and quotation marks omitted). Prison officials or a state department of correction "cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999.

Although RLUIPA is to be construed broadly in favor of protecting an inmate's religious rights, *id.*, the statute does not "elevate accommodation of religious observances over an institution's need to maintain order and safety," *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). A prisoner's requests for religious accommodation must not override other significant interests within a prison setting. "Should inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." *Cutter*, 544 U.S. at 726. In the words of the Supreme Court, "context matters." *Id.* at 723 (quotation marks and alteration omitted).

### C.    FERPA

Plaintiff also asserts claims under FERPA, Idaho's equivalent of the federal Religious Freedom Restoration Act (RFRA), 42 U.S.C.A. § 2000bb *et seq*. "While Idaho has little case law interpreting the FERPA, the legislative history of the statute makes it

clear that, in adopting the statute, the Idaho legislature intended to adopt the 'compelling interest test' contained in" the RFRA. *State v. White*, 271 P.3d 1217, 1220 (Idaho Ct. App. 2011). The legal standards applicable to RFRA claims, and therefore FERPA claims, are the same as those applicable to RLUIPA claims. *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418, 436 (2006).

### D.     *Equal Protection Clause*

"[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (internal citation and quotation marks omitted).

Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 440 (1985). Otherwise, equal protection claims are subject to a rational basis inquiry. *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993).

### 4.     Discussion

Plaintiff has sufficiently alleged violations of his religious rights under the First Amendment, RLUIPA, FERPA, and equal protection claims and may proceed on those claims against Defendants Reinke, Kempf, Zmuda, Cluney, Evans, Yordy, Blades, Coburn, Peneku, Hunter, Kirkman, Copeland, and Tewalt. The Court has original

**INITIAL REVIEW ORDER - 8**

jurisdiction over Plaintiff's § 1983 and RLUIPA claims, and it will exercise supplemental jurisdiction over Plaintiff's FERPA claims. *See* 28 U.S.C. § 1367.

Plaintiff may proceed at this time against the IDOC on his FERPA claims. However, he may not proceed against the IDOC on his § 1983 and RLUIPA claims because, under the Eleventh Amendment, the IDOC is immune from suit in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890).

## REQUEST FOR APPOINTMENT OF COUNSEL

Plaintiff also seeks appointment of counsel. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Social Services*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id*. To determine whether exceptional circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate his claims pro se in light of the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *Id*.

Plaintiff's Complaint, liberally construed, states a claim upon which relief could be granted if the allegations are proven at trial. However, without more than the bare allegations of the Complaint, the court does not have a sufficient basis upon which to

**INITIAL REVIEW ORDER - 9**

assess the merits, if any, at this point in the proceeding. The Court also finds that Plaintiff has articulated his claims sufficiently, and that the legal issues in this matter are not complex. Based on the foregoing, the Court will deny Plaintiff's request for appointment of counsel. If it seems appropriate at a later date in this litigation, the Court will reconsider appointing counsel.

Plaintiff should be aware that a federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(d). *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989). Rather, when a Court "appoints" an attorney, it can do so only if the attorney voluntarily accepts the assignment. *Id.* The Court has no funds to pay for attorneys' fees in civil matters such as this one. Therefore, it is often difficult to find attorneys willing to work on a case without payment, especially in prisoner cases, where contact with the client is especially difficult. For these reasons, Plaintiff should attempt to procure his own counsel on a contingency or other basis, if at all possible.

## CONCLUSION

This Order does not guarantee that any of Plaintiff's claims will be successful; it merely finds that one or more is colorable, meaning that they will not be summarily dismissed at this stage. Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims. It is Plaintiff's burden to thoroughly set forth the legal and factual basis for each claim.

**INITIAL REVIEW ORDER - 10**

# ORDER

**IT IS ORDERED:**

1.     Plaintiff's Request for Appointment of Counsel (contained in the Complaint) is DENIED.

2.     Defendants shall be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of Summons, the answer or pre-answer motion shall be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court shall forward a copy of the Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of Summons to **Mark Kubinski, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho, 83706**.

3.     Should the Deputy Attorney General determine that the individuals for whom counsel was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, he should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, indicating which individuals for whom service will not be waived.

4.     If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or for certain individuals, Plaintiff shall have an

**INITIAL REVIEW ORDER - 11**

additional 90 days from the date of such notice to file a notice of physical

service addresses of the remaining Defendants, or claims against them may

be dismissed without prejudice without further notice.

5.      The parties shall not engage in any discovery until an answer has been

filed. Within 30 days after an answer has been filed, the parties shall

provide each other with the following voluntary disclosures: all relevant

information pertaining to the claims and defenses in this case, including the

names of individuals likely to have discoverable information, along with

the subject of the information, as well as any relevant documents in their

possession, in a redacted form if necessary for security or privilege

purposes; and, if necessary, they shall provide a security/privilege log

sufficiently describing any undisclosed relevant documents which are

alleged to be subject to nondisclosure. Any party may request that the Court

conduct an in camera review of withheld documents or information.

6.      If, instead of filing an answer, Defendants file a motion to dismiss under

Federal Rule of Civil Procedure 12(b) or a motion for summary judgment

under Rule 56 that addresses preliminary procedural issues rather than the

merits, then disclosures and discovery shall be automatically stayed with

the exception that Defendants shall submit with any exhaustion-of-

administrative-remedies motion a copy of all grievance-related forms and

correspondence, including a copy of original handwritten forms submitted

by Plaintiff that either fall within the relevant time period or that otherwise

**INITIAL REVIEW ORDER - 12**

relate to the subject matter of a claim. **Submission of a motion for summary judgment addressing procedural issues does not foreclose any party from later filing a motion for summary judgment on the merits.**

7.      Each party shall ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party shall sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

8.      The Court will not consider *ex parte* requests unless a motion may be heard *ex parte* according to the rules and the motion is clearly identified as requesting an *ex parte* order, pursuant to Local Rules of Civil Practice before the United States District Court for the District of Idaho 7.2. ("*Ex parte*" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

9.      All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil

Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United

States District Court for the District of Idaho 5.1 and 7.1. The Court will

not consider requests made in the form of letters.

10.    Discovery shall not be filed with the Clerk of Court, but shall be exchanged

between parties, only, as provided for in the Federal Rules of Civil

Procedure. Motions to compel discovery shall not be filed unless the parties

have first attempted to work out their disagreements between themselves.

11.    No party may have more than three pending motions before the Court at

one time, and no party may file a motion on a particular subject matter if

that party has another motion on the same subject matter then pending

before the Court. Motions submitted in violation of this Order may be

stricken, summarily denied, or returned to the moving party unfiled.

12.    Plaintiff shall notify the Court immediately if Plaintiff's address changes.

Failure to do so may be cause for dismissal of this case without further

notice.

DATED: **May 11, 2015**

_____
Honorable Candy W. Dale
United States Magistrate Judge

**INITIAL REVIEW ORDER - 14**